**NORBERTO RIVERA, Appellant,**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. No. 1995/081

T.C. Crim. No. 622/1992

District Court of the Virgin Islands

Div. of St. Croix

October 22, 1997

GREGORY E. MILLER, ESQ., St. Croix, U.S.V.I., *for Appellant*

ELLIOT MCIVER DAVIS, ESQ., (Department of Justice), St. Thomas, U.S.V.I., *for Appellee*

MOORE, *Chief Judge*, BROTMAN, and DIASE, *Judges*

## OPINION OF THE COURT

PER CURIAM

This appeal arose out of a guilty verdict on single counts of Burglary in the Third Degree, Burglary in the Second Degree, and

Grand Larceny. The issues presented are whether appellant's rights to a speedy trial and to effective assistance of counsel were violated. For the reasons which follow, we affirm the conviction.

## I. Facts

Norberto Rivera ["appellant"] was arrested on August 13, 1992 and advised of his rights at the Territorial Court on August 14, 1992. Unable to post $ 50,000.00 bail, with no 10% provision, and having been denied release to a third-party custodian, appellant was detained pre-trial. Appellant's motion on August 24, 1992, for release was apparently never ruled on by the court.[1] A six (6) count Information was filed on August 27, 1992.[2] Appellant was arraigned the next day and requested a jury trial. On October 7, 1992, appellant filed a second motion for release which was not opposed by the Government. Although the Territorial Court entered an order on October 13, 1993, reducing appellant's bail to $ 15,000.00 and releasing him to a third-party custodian, he apparently was never able to satisfy the conditions, for he filed his third motion for release on January 11, 1993, without any reference to the October 13th order.

On April 5, 1993, jury selection and trial were scheduled for May 24, 1993. Appellant was apparently released on bail at some point because on the day of trial his counsel requested that he be detained until a psychiatric and/or psychological evaluation could be completed. Counsel represented that appellant was not coop-

---

[1] The record in this case as presented by both parties was deficient in that many pertinent facts were omitted entirely. Both parties are advised to review the FED. R. APP. P. 28 and 30 pertaining to the required contents of both appellant's and appellee's briefs and appendices. This Court undertook an independent evaluation of the Territorial Court record in order to ascertain facts necessary to this analysis. FED. R. APP. P. 11(b) provides in pertinent part that

[w]hen the record is complete for purposes of the appeal, the clerk of the [territorial]-court shall transmit it forthwith to the clerk of the court of appeals. The clerk of the [territorial] court shall number the documents comprising the record and shall transmit with the record a list of documents correspondingly numbered and identified with reasonable definiteness.

[2] The Information charged Norberto Rivera with: Count I: Burglary in the Third Degree in violation of 14 V.I.C. § 444(1); Count II: Burglary in the Second Degree in violation of 14 V.I.C. § 443; Count III: Grand Larceny in violation of 14 V.I.C. § 1083(1); Count IV: Aggravated Assault and Battery, 14 V.I.C. § 298(1); Count V: Escape from Custody, 14 V.I.C. § 661(1); and Count VI: Interfering With an Officer Discharging His Duty, 14 V.I.C. § 1508. On July 31, 1995, the date of jury selection, Counts IV to VI were dismissed by the Government.

erating with him and did not seem to understand the seriousness of the charges against him. The Territorial Court granted the motion for evaluation on May 25, 1993. Appellant was later arrested and imprisoned for failure to keep in contact with his attorney. On June 14, 1993, he made his fourth motion for release, and on June 17, 1993, appellant's bail was further reduced to $ 5,000.00 and he was released pending trial. However, by letter dated June 22, 1993, appellant's custodian (his mother) stated that she no longer wanted to have him under her custody, citing as reasons his drug abuse and lack of respect for her. After a hearing held on July 21, 1993, the court ordered appellant to report to Treatment Alternative to Street Crime ["TASC"] for a psychological evaluation.

The court next set the case for review on February 23, 1994, at which time counsel for both the Government and the appellant agreed to continue the case to a date in April. When appellant failed to appear on time for a hearing to review the case on April 20, 1994, a warrant was issued for his arrest. Upon learning that appellant had in fact appeared, although late, the court vacated the warrant and the case was continued to June 1, 1994.

At a case review hearing on June 1, 1994, the presiding judge informed counsel that appellant had eight pending cases.[3] The judge ordered the Government to assign one specific attorney to handle all eight cases and the Territorial Public Defender to assign one attorney to handle all plea agreements, if any. At a pre-trial conference on November 9, 1994, the case was assigned to be tried before a particular judge, although no specific date for trial was set.

At some point, although there is no reason provided in the record, appellant was again taken into custody. In a motion dated May 10, 1995, appellant filed his fifth, and this time expedited, motion for release, or in the alternative, to set a date for trial.

By Order dated July 25, 1995, the trial court informed the parties that trial of the seven other cases on the same date was "impracticable." The Government was ordered to notify the court of its preference for the order of trial of the cases. On July 27, 1995, the

---

[3] The docket lists the pending cases as: Crim. No. 533/1992; Crim. No. 468/1993; Crim. No. 381/1994; Crim. No. 382/1994; Crim. No. 383/1994; Crim. No. 384/1994; and Crim. No. 461/1994.

parties appeared before the court for a pre-trial conference at which time appellant moved for a bench trial which the court took under advisement. Appellant filed a formal waiver of trial by jury, and on July 28, 1995, the court found that appellant's waiver of a jury trial was not a knowing and voluntary one, and the motion for bench trial was denied. On July 31, the defense motion to suppress any in-court identification of the appellant was denied, and the Government's motion to dismiss counts IV, V and VI was granted. On that same date appellant withdrew his waiver of a jury trial. At this time, counsel for appellant informed the court that a psychiatric or psychological evaluation had never been conducted despite the court's May 25, 1993 Order,[4] and orally renewed his motion for such evaluation. The motion for psychological testing was denied, and the jury was selected.[5]

---

[4] Counsel for appellant further informed the court that he had only been with the Territorial Public Defender's office for ten (10) days — perhaps as explanation why he had not discovered earlier that the evaluations had not been conducted.

[5] On July 31, 1995, in response to appellant's motion for a psychiatric or psychological evaluation, the trial judge found as follows:

The Court notes that . . . a motion was made back in May of 1993, and ordered—the Court would also note that the motion that was filed back in 1993 indicated no basis for the motion, just simply asked that the defendant be evaluated. That that motion was granted; and since then the defendant has had a series of pending cases before the court, apparently, one in which he actually waived the jury trial.

And, the defendant then appeared in court before this Court Thursday and Friday of last week attempting to waive his right to a jury trial. He then appeared before the Court with counsel. His counsel represented to the Court that he had discussed the matter with him, and that he was prepared to waive his right to a trial by jury. The Court inquired and determined that the defendant had not entered a knowing waiver.

The Court could not determine, based upon the statements of the defendant, whether the advantages and disadvantages of a jury trial versus a bench trial were explained to the defendant; or if they were explained, whether he had a sufficient understanding of them simply because the defendant indicated not that he didn't understand, but that they were not explained him. The defendant now stands before the Court asking for a psychological evaluation, at this late hour when this case is poised for trial, by his lawyer, indicating that now as an afterthought, after having discussed the waiver with him, that he doesn't think he is competent. And, the reason is he explained the advantages and disadvantages of a jury versus bench trial to him yet he came to court and said that was not done.

This Court would find that, and having considered all the statements made by defense counsel, insufficient to establish that there is something wrong with this defendant's head or that there is a need for a psychological evaluation. The motion would be denied.

(Trial Transcript, Vol. I at 18-19.)

At the jury trial which commenced on August 1, 1995, appellant was found guilty as charged. Then, on August 28, 1995, the Government filed a habitual criminal information requesting that appellant be sentenced as a habitual offender pursuant to V. I. CODE ANN. tit. 14, §§ 61(a) & (b) and 62. On November 29, 1995, pursuant to 14 V.I.C. § 61(a), appellant was sentenced as a habitual offender to ten years imprisonment without parole or any other form of release and was given credit for time served. Appellant's notice of appeal was timely filed on December 8, 1995.[6]

## II. Discussion

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction pursuant to 4 V.I.C. § 33 and § 23A of the Revised Organic Act of 1954,[7] to review judgments and orders of the Territorial Court in all criminal cases in which the defendant has been convicted, other than a plea of guilty.

■ Whether appellant's Sixth Amendment[8] constitutional right to a speedy trial was violated is a question of law over which we exercise plenary review. *E.g., Warner v. Government of the Virgin Islands*, 33 V.I. 93 (D.C.V.I. 1995). This Court is also called upon to make an independent judgment on whether the facts thus found constitute ineffective assistance of counsel. *Government of the Virgin Islands v. Weatherwax*, 33 V.I. 399, 408, 77 F.3d 1425, 1430-31 (3d Cir. 1996). Our review of the effectiveness of counsel's assistance is de novo. Weatherwax, 33 V.I. at 409, 77 F.3d at 1431.

### B. Speedy Trial

■ Appellant avers that he was denied his constitutionally protected right to a speedy trial. A defendant asserting a speedy

---

[6] On appeal, counsel for appellant moved to dismiss the instant matter based on his legal opinion that appellant's appeal lacked merit. In response to that motion, this Court ordered that counsel's withdrawal be in conformance with 3rd Cir. LAR 109.2 and *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967).

[7] 48 U.S.C. § 1613a (1994), reprinted in V.I. CODE ANN., Organic Acts, at 159-60 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit.1).

[8] Section 23A of the Revised Organic Act of 1954, 48 U.S.C. § 1613a (1994), reprinted in V.I. CODE ANN., Organic Acts, at 159-60 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit.1).

73

trial violation in the Territorial Court of the Virgin Islands is limited to the relatively narrow protection of the Sixth Amendment to the Constitution,[9] which provides, in pertinent part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI.

■ To determine whether appellant's Sixth Amendment right to a speedy trial has been violated, this Court must examine the facts using the four-pronged test in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), namely: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy trial; and 4) prejudice to the defense resulting from the delay. This Court must keep in mind as it evaluates these factors that they do not have "talismanic qualities," but must be considered in a sensitive balancing process. *See U.S. v. Benjamin*, 816 F. Supp. 373, 28 V.I. 133 (D.C.V.I. 1993). Thus, "each delay is to be analyzed independently and in the context of the particular case." *Barker*, 407 U.S. at 521-22.

The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.

A second difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and the trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the

---

[9] The Speedy Trial Act, 18 U.S.C. §§ 3161-3174, only applies in federal courts. *Government of the Virgin Islands v. Bryan*, 818 F.2d 1069 (3d Cir. 1987); *see Government of the Virgin Islands v. Zachry*, 24 V.I. 244 (Terr. Ct. 1989); *Government of the Virgin Islands v. Quetel*, 18 V.I. 145, 148-49 (Terr. Ct. 1982) ("Since the [Speedy Trial] Act applies only to federal offenses . . . [and] no speedy trial act has been enacted by the Virgin Islands Legislature . . . for the Territorial Court, which has jurisdiction over territorial offenses . . . the Act" does not apply to criminal proceedings in the Territorial Court.)

right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.

Finally, and perhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied.

*Barker*, 407 U.S. at 519-21. Nevertheless, the delay which can be tolerated for an ordinary street crime is considerably less than for more serious crimes, although the Supreme Court has defined no specific time at which a defendant's right to a speedy trial is violated. *Barker*, 407 U.S. at 531. The four prongs of Barker will be considered seriatim.

1. First Prong: Length of the Delay

■ Appellant was arrested on August 13, 1992, and three years elapsed before he was brought to trial on August 1, 1995. Admittedly, three years is a long time. We note, however, that in Barker a five-year delay between arrest and trial — where the prosecution requested and was granted sixteen continuances, only two of which were objected to by the defense — was not considered a violation of defendant's right to a speedy trial. While, unlike appellant, Barker was not detained pending trial, it appears that appellant's detention was just as likely due to arrests for six more crimes while he awaited trial in this matter. A rough overview of the cases against appellant during this period is as follows:

|  | DATE OF OFFENSE | ARREST | NO. OF COUNTS |
|---|---|---|---|
| CRIM. NO. 622/92 | August 13, 1992 | August 13, 1992 | Six (6) |
| CRIM. NO. 468/93 | April 21, 1993 | October 20, 1993 | One (1) |
|  | October 08, 1993 |  | Two (2) |

|  | DATE OF OFFENSE | ARREST | NO. OF COUNTS |
|---|---|---|---|
|  | October 17, 1993 |  | Four (4) |
| CRIM. NO. 381/94 | April 18, 1994 | May 25, 1994 | [not in record] |
| CRIM. NO. 382/94 | April 20, 1994 | [not in record] | [not in record] |
| CRIM. NO. 383/94 | May 13, 1994 | May 25, 1994 | [not in record] |
| CRIM. NO. 384/94 | April 15, 1994 | [not in record] | [not in record] |
| CRIM. NO. 461/94 | May 19, 1994 | [not in record] | [not in record] |

Moreover, the record in this case reveals no delays directly attributable to the prosecution or the court, nor does appellant make any claims to that effect. In short, the length of the delay factor alone does not rise to the level of a constitutional speedy trial violation.

## 2. Second Prong: Reason for the Delay

Appellant contends that he moved the court on two occasions to set a trial date. The first motion for release or to set a trial date was filed in early January of 1993. (Appellant's App. at 5-8.) The court responded on April 5, 1993, with an order setting the matter for jury selection and trial on May 24, 1993. On the day of trial, appellant requested a psychiatric and/or psychological evaluation, and the court continued the case without date pending the results of the evaluation. On June 17, 1993, the court granted appellant's motion for release made three days earlier, which did not mention the pending psychological evaluation.

The exact date appellant was returned to prison is not a part of this record, but on May 15, 1995, appellant filed his motion for release or to set a trial date. In response, jury selection was set for July 31, 1995. It was not until jury selection was about to begin that the defense disclosed the psychological evaluation had never been

performed. Once again, appellant does not make any attempt to pinpoint or clarify in the record whether these delays were caused by either the prosecution or congestion in the court's docket.

3. Third Prong: Whether Appellant Asserted His Sixth Amendment Right to a Speedy Trial

■ We note at the outset, "while a prompt assertion of the right is to be given greater weight, failure to make a demand for speedy trial will not automatically result in a waiver of the right." *See Benjamin*, 28 V.I. at 149 (*citing Barker*, 407 U.S. at 528). The Supreme Court has held that "presuming waiver from a silent record is impermissible." *See, e.g., Carnley v. Cochran*, 369 U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1962). The failure to make this assertion before the trial court especially should not be deemed a waiver where the nucleus of appellant's argument is that his failure was due to ineffective assistance of counsel while before the trial court.

4. Fourth Prong: Prejudice to the Appellant

■ As appellant Rivera suggests, some delays appreciably harm a defendant's ability to defend himself. *See Barker*, 407 U.S. at 526. The gravamen of appellant's claim of prejudice is that "witnesses' memories fade after almost three (3) years have passed." (Brief of Appellant at 11.) As this Court noted in *Warner v. Government of the Virgin Islands*, 33 V.I. 93 (D.C.V.I. 1995), "All four [Barker] factors are to be balanced in light of the facts and the circumstances of the case . . . [but] once a defendant has been convicted it would be the rarest of circumstances in which a right to a speedy trial could be infringed without a showing of prejudice." *See Burkett v. Cunningham*, 826 F.2d 1208, 1220 (3d Cir. 1987). This balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. *See Barker*, 407 U.S. at 530. Within this fourth prong, the Supreme Court has identified three interests which should be assessed: (1) whether the defendant suffered oppressive pretrial incarceration; (2) whether the delay contributed to the anxiety and concern of the accused; and (3) whether the delay impaired the defense. Of these factors, the last is the most serious. *Barker*, 407 U.S. at 532.

Appellant was not detained for the full pre-trial period. He was released from prison several times only to be remanded to custody

77

on other offenses as well as for violations of the terms of release on this offense. Thus, it appears that any hardship appellant may have suffered due to his pre-trial detention was, to a great extent, attributable to his inability to comply with the conditions of his release. Appellant also does not argue in this appeal that he suffered any anxiety due to the charges against him.

As regards prejudice to the appellant, he raises a valid claim of the fading memories of witnesses after three years. The facts are relatively uncomplicated, however. First, Mr. Dominique James ["James"] testified that he walked into his bedroom and saw the appellant trying to exit through the louvers, but was unable to stop him. When appellant was caught by the police Mr. James identified him as the man he had seen in his home. (Appellant's Appendix, Trial Transcript at 61-64.) Second, the incident took place at about 10:00 a.m. in broad daylight. Third, there was testimony that appellant ran past Michael Jno-Finn, Sr., who chased him for a distance. (*Id.* at 76.) Fourth, Kevin Harris testified that appellant ran in front of him as he was trying to escape. (*Id.* at 77.) Fifth, several witnesses testified that the main difference between defendant's appearance on the day of his arrest, and his appearance at trial was that he seemed to have gained a little weight. Sixth, Ms. Delores DeJesus identified the Nintendo set appellant was carrying as belonging to her children. Finally, Corporal Carlos Rosario testified that he apprehended appellant after joining the chase and never lost sight of him. The facts are relatively straightforward, and there is little likelihood that the witnesses confused facts such as dates, times, places and persons involved in the incident. We find that fading memories do not present a significant problem in this case, and, after weighing the four Barker factors, this Court holds that appellant's right to a speedy trial was not violated.

## C. Ineffective Assistance of Counsel

Appellant's basic assertion on appeal is that his right to a speedy trial was not asserted before the trial court due to ineffective assistance of counsel. He argues that none of his attorneys[10]

---

[10]The record reveals that at least four attorneys actively took part at various stages in appellant's representation: Thomas T. Zollinger, Esq., Harold Willocks, Esq., Melvin H.

moved for dismissal of the action due to the delay in bringing the matter to trial. Appellant avers that the "fact that the information was filed on or about August 27, 1992, and the matter languished in the Court for approximately three (3) years, should have alerted any one of the first three attorneys who handled this case as to the speedy trial issue." (Brief of Appellant at 5.)

■ Ordinarily, a claim of ineffective assistance of trial counsel is not appropriately reviewed for the first time on direct appeal, but must be raised by a collateral proceeding because the necessary facts about counsel's representation of the defendant have not been developed. *Government of the Virgin Islands v. Smalls*, Crim. No. 1983/077 (D.C.V.I. STT/STJ January 23, 1985); *Government of the Virgin Islands v. Blyden*, Crim. No. 1981/079 (D.C.V.I. STT/STJ April 3, 1985). However, such a collateral review is unnecessary if the appellate court can conclude that it has "an adequate record and thus an additional evidentiary hearing need not be conducted to develop the facts." *Government of the Virgin Islands v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984). Like the Court in Zepp, we, likewise, find that the record in this case is adequate, and therefore proceed to consider whether the appellant was denied the effective assistance of counsel.

■ ■ While a claim of ineffective assistance of counsel is an attack on the fundamental fairness of the trial, the inquiry into the performance of appellant's trial counsel "must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668, 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In this inquiry, appellant bears the burden of demonstrating that the representation provided him by counsel was constitutionally inadequate, and that he was prejudiced by his attorney's inadequacies. That is, where a defendant alleges a deficiency in attorney performance, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

---

Evans, Esq. and Miguel Camacho, Esq. Kathryn Slade, Esq. appears as counsel of record insofar as providing assistance to counsel (Evans) at trial, without actually arguing on appellant's behalf.

undermine confidence in the outcome." *Id*. at 694. The Sixth Amendment guarantee of effective assistance of counsel is comprised of two correlative rights: (1) the right to counsel of reasonable competence,[11] and (2) the right to counsel's undivided loyalty.[12] The Supreme Court has also stated that an attorney's performance is deficient if it is unreasonable under "prevailing professional norms." *Strickland*, 466 U.S. at 688.

■ Although appellant baldly asserts that trial counsels' failure to move for a speedy trial constituted ineffective assistance all by itself, he has made no attempt to present a *Strickland* analysis. Appellant contends that "the stark truth of this matter appears to be that [he] was prejudiced by the lack of attention to his case," despite the concession by appellate counsel that he is not "suggesting any incompetence on the part of any of the . . . attorneys referred to here in." (Brief of Appellant at 13-14.)[13] Our independent review of this record reveals no facts or circumstances which would amount to ineffective assistance of counsel. As demonstrated by the discussion leading to our rejection of appellant's speedy trial claim, appellant simply has not met his burden of showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## III. Conclusion

For the above stated reasons, this Court will affirm the conviction based on the record before it. Appellant's constitutional right to a speedy trial right was not violated, and we do not find that appellant's trial counsel was ineffective.

DATED this 22nd day of October, 1997.

### ORDER OF THE COURT

AND NOW this 22nd day of October, 1997, having considered the arguments and submissions of the parties; and for the reasons

---

[11] *See McMann v. Richardson*, 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970).

[12] *See Wood v. Georgia*, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981).

[13] Appellant also suggested that his counsel at trial may have been intoxicated, but later admitted to present counsel that he came to that conclusion because other people had told him his attorney was an alcoholic. (Appellant's Appendix at 39.)

set forth in the Court's accompanying Opinion of even date, it is hereby

ORDERED AND ADJUDGED that appellant's conviction is AFFIRMED.